IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KRISTA J. BRAUNGARDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-3037 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

<u>OPINION</u>

CHARLES H. EVANS, U.S. Magistrate Judge:

Plaintiff Krista J. Braungardt appeals from the denial of her application for Social Security Disability Insurance Benefits (Disability Benefits).  42 U.S.C. §§ 416(I), 423.  The parties consented, pursuant to 28 U.S.C. § 636©,  to  have  this matter proceed before this Court. <u>Consent to Proceed Before a United States Magistrate Judge, and Order of Reference (d/e 5)</u>.  This appeal is brought pursuant to 42 U.S.C. § 405(g).  Pursuant to  Local  Rule 8.1(D), Plaintiff has filed a Brief in Support of  Complaint (d/e 11), which the Court construes as a motion for  summary judgment.   The Commissioner has filed

1

a Motion for Summary Affirmance (d/e 13) and Commissioner's Memorandum in Support of Motion for Summary Affirmance (d/e 14). For the reasons set forth below, the decision of the Defendant Commissioner of Social Security is affirmed.

## STATEMENT OF FACTS

Braungardt was born on September 1, 1958. She graduated from high school and completed an EMT training program and is a licensed EMT. Notice of Filing of Supplemental Transcript and Response to Plaintiff's Motion for Extension of Time to Submit Plaintiff's Motion for Summary Judgment (d/e 10), attached Certified Supplemental Transcript of Proceedings before Social Security Administration (Supp. R.). She worked as an EMT, an ambulance dispatcher and a clerical assistant. She last worked on March 28, 2007. Supp. R. 478 - 480.

Braungardt suffered from neck and back pain that radiated into her legs. A March 2007 MRI showed moderate central canal stenosis at L4-5 with disc space bulging at that level. Answer to Complaint (d/e 6), attached Certified Transcript of Proceedings Before the Social Security Administration (R.), at 230. On April 2, 2007, Dr. Brian Russell, M.D., performed a decompressive microforaminotomy and discectomy. R. 246.

She saw Dr. Russell again on May 16, 2007. R. 248. Dr. Russell stated that she looked to be doing much better. She had no pain radiating into her legs, but had some fatigue in her back and legs. He told her not to lift over fifteen to twenty pounds. R. 248. On May 25, 2007, Braungardt saw her primary care physician, Dr. Nathan DeWitt, for allergic rhinitis. Dr. DeWitt noted that Braungardt had gained ten pounds, going from 183 pounds to 193 pounds. R. 259. Braungardt complained of pain in her knees and back. R. 259.

Braungardt saw Dr. Russell again on June 27, 2007. Braungardt did not have severe radiating leg pain, but still had back pain. Dr. Russell suggested physical therapy. R. 249.

On July 2, 2007, Braungardt was evaluated for physical therapy. Braungardt reported that the surgery had not helped her back pain. She stated that the pain was constant and could get to a 9 on a scale of 1 to 10. The evaluator noted that Braungardt had pain with palpitation and worse pain with a prolonged gait. The evaluator rated Braungardt's strength in her bilateral lower extremities at 4+/5. R. 251.

A July 26, 2007, MRI showed a previous L4-5 hemi-laminotomy, but no other changes in the lumbar spine. MRI showed

thoracic spondylosis with evidence of multilevel degenerative disc disease most marked from T6-7 through T9-10.  R. 231.  She saw Dr. DeWitt on July 31, 2007. R. 260.  Braungardt continued to complain of chronic pain. Dr. DeWitt  prescribed Lyrica.  R. 261.

Dr. Russell met with Braungardt on August 12, 2007.  Dr. Russell told Braungardt that she had degenerative changes in her spine, and he did not believe that any additional surgery was going to be of any benefit.  R. 254.

Braungardt went to Dr. Timothy VanFleet, M.D., on September 7, 2007.  R. 262-63.  Dr. VanFleet noted that Braungardt reported increasing tremendous constant pain in her lumbar spine, thoracic, spine, and anterior chest and that physical therapy exacerbated her pain and made her symptoms worse.  R. 262.  Dr. VanFleet diagnosed thoracic and lumbar degenerative disc disease, thoracic radiculopathy, and status post laminotomy.  Dr. VanFleet suggested epidural steroid injections and reconditioning.  R. 263.

On September 27, 2007, Dr. Frank Norbury, M.D., a state agency physician, reviewed Braungardt's medical records and prepared a residual function capacity assessment.  Dr. Norbury opined that Braungardt could

4

lift fifty pounds occasionally, twenty-five pounds frequently, sit or stand for six hours in an eight-hour day, and occasionally climb ladders, ropes, and scaffolds.  R. 265-72.

Braungardt saw Dr. Paul Smucker, M.D., on November 5, 2007.   R. 312-15.   Braungardt reported to Dr. Smucker that taking deep breaths, sitting for too long, standing or lying down in one position, or making certain movements would increase her pain.  R. 312.  Dr. Smucker diagnosed thoracic degenerative disc disease, soft tissue pain in the  thoracic area, probable thoracic radiculopathy, and lumbar degenerative disc disease, status post laminotomy.  R. 313.  Dr. Smucker stated that Braungardt's  insurance carrier would not cover epidural steroid  injections, but still suggested injections.   Dr. Smucker recommended additional  physical  therapy.  R. 312-15.

Braungardt returned to see Dr. Smucker on December 3, 2007. Braungardt  reported  that her thoracic pain went from left-sided to bilateral and that Lyrica did not help.  R. 311.  Dr. Smucker noted that Braungardt was not tolerating physical therapy.  Dr. Smucker offered to talk to the insurance carrier regarding epidural steroid  injections. R. 311.   On December 6, 2007, Dr. Smucker performed an EMG

study that showed bilateral thoracic radiculopathy that involved thoracic paraspinals in the T9-10-11 area.  R. 309-10.

Dr. Smucker saw Braungardt again on December 28, 2007.  He diagnosed  thoracic disc herniation with radiculopathy.  R. 308.  On January  17, 2008, Dr. Smucker performed a left TS transforaminal epidural steroid injection.  R. 306.  Braungardt returned to Dr. Smucker on February 8, 2008, and reported that the injection was not effective.    Dr. Smucker recommended that Braungardt see Dr. VanFleet for possible surgery.  R. 320.

On February 11, 2008, Dr. Frank Jimenez, M.D., another state agency physician, reviewed Braungardt's medical records and affirmed Dr. Norbury's assessment.  R. 316-18.

On February 25, 2008, Braungardt went to see Dr. Bruce Vest, M.D. Dr. Vest  diagnosed  post-lumbar laminotomy state at L4-5 on the right side, moderate spinal stenosis at L4-5, and degenerative disc disease with disc bulges at T6-7, T7-8, T8-9, T9-10.  R. 339-42.  Dr. Vest administered trigger point injections and prescribed a back brace and pain medication. R. 342.  Dr. Vest told Braungardt to avoid heavy lifting.  R. 342.

Dr. Vest saw Braungardt again on March 25, 2008.  R. 336-37.  She

was doing a little better with the brace and trigger point injections.  Dr. Vest told Braungardt to use the back brace two to three hours in the morning and two to three hours in the afternoon.  He also told her to do daily exercises and to keep her weight appropriate.  R. 337.

On July 15, 2008, an MRI showed the Braungardt's lumber spine showed disc bulging at several levels, posterior focal annular bulge versus disc protrusion at L4-5, central canal stenosis and some foraminal narrowing primarily at L4-5, mild to moderate facet osteoarthritis, and laminectomy defect on the right at L4-5.  R. 321.  An MRI of Braungardt's thoracic spine demonstrated disc bulging at several levels, no discreet herniation, and fusion at C5-6.  R. 322.  After reviewing the MRIs, Dr. Vest diagnosed post-lumbar laminotomy state at L4-5 on the right side, moderate spinal stenosis at L4-5, degenerative disc disease of the thoracic lumbar spine with multiple bulging lower thoracic discs and lumbar discs. R. 330-32.  Dr. Vest prescribed a TENS unit and changed her pain medication.  R. 331.

The Administrative Law Judge (ALJ) conducted an evidentiary hearing on August 12, 2008.  Supp. R. 469-505.  Braungardt was represented by counsel at the hearing.  Braungardt testified at the hearing.  Braungardt

testified that she lived in Pittsfield, Illinois, with her husband. She was five feet tall and weighed 188 pounds. Supp. R. 474. She and her husband lived in a bi-level home with a basement. She drove around Pittsfield. Supp. R. 475. Her husband worked as a heavy equipment operator for a construction company. Supp. R. 476. She testified that she received $10.00 per month from her former employer's retirement. Supp. R. 477.

Braungardt testified that she normally got up at 6:00 a.m. in the morning. She fed the cats and did some housework. She vacuumed with a lightweight vacuum. Supp. R. 481. She said that she did the housework in short intervals and rested in between. She estimated that she spent a total of about an hour a day doing housework. Supp. R. 503. Braungardt testified that she cooked, did laundry, and washed dishes. She had difficulty changing beds. Supp. R. 482. She stated that her husband did the grocery shopping, but she went to the drugstore and to clothing stores every now and then. Supp. R. 482. She said that she shopped for half an hour at a time. Supp. R. 482. She mowed the lawn on a riding mower. Supp. R. 487. She said that it took about half an hour to mow the yard on the riding mower. Supp. R. 504. Braungardt

testified that she did not socialize with friends or neighbors. R. 483. She occasionally went out to eat with her husband. Supp. R. 486. She watched television, read, did puzzles, and read email on the computer. Supp. R. 484, 487. She also sewed and engaged in other crafts. Supp. R. 487. Braungardt took care of her personal hygiene. She had trouble bending in the shower. Supp. R. 487.

Braungardt did not smoke or drink. She took anti-inflammatory, muscle relaxant, and anti-depressant medication daily. Supp. R. 488. This medication made her sleepy and forgetful. Supp. R. 490. She also took stomach acid reducers because the anti-inflammatory medication caused acid reflux. R. 489. She took Tramadol at night for pain. Supp. R. 490-91.

Braungardt said that she had severe back pain. She rated that pain as an 8 on a scale of 1 to 10. Supp. R. 491. She testified that the medication took the edge off the pain, but did not relieve the pain. Supp. R. 491. She testified that the pain was so great that she was considering more surgery on her back. Supp. R. 493. Braungardt testified that she also had problems with her knees, but had never had a doctor examine them. Supp. R. 499.

Braungardt testified that she has tried back braces, TENS stimulation, and medication, but nothing helped. Supp. R. 500. She stated that she woke up several times at night and read to get back to sleep because of the pain. Supp. R. 500. She said that no position was comfortable. Supp. R. 501.

Braungardt testified that she could sit for a half hour, walk outside around her house, and lift a gallon of milk. Supp. R. 497. She testified that she could not bend, kneel or crawl. Supp. R. 498. The ALJ concluded the hearing after Braungardt's testimony.

On October 3, 2008, Dr. Vest performed microscopic bilateral lumbar laminectomies and bilateral foraminotomies at L5-S1 and L4-5. R. 370. On October 17, 2008, Braungardt saw Dr. Vest. She reported that she was somewhat improved, but was still experiencing pain in both legs. R. 384. Braungardt saw Dr. Vest again on November 14, 2008. Braungardt said that she had more pain in the lumbar region and in the front of her legs, but the pain in the posterior of her legs had greatly improved and the numbness had improved. R. 381. Dr. Vest prescribed Neurotin for numbness. R. 382.

The ALJ conducted a second hearing on December 8, 2008. The

ALJ held another hearing because a vocational expert was not available for the first hearing. Supp. R. 455. Braungardt and vocational expert Brandy Young testified at this hearing. Braungardt testified about her work history briefly. Supp. R. 457-60. She then testified about her current medication. She took extra strength Naproxen and Tylenol for her pain. She rated her pain at a 3 or 4 on a scale of 1 to 10. Supp. R. 460-61.

Vocational expert Young then testified. The ALJ and Young had the following colloquy:

> Q    . . . Please assume a person the age of 49 with a high school education and the past relevant work experience as you have identified. Please assume I would find this person capable of performing exertional demands of sedentary work as defined in the Social Security regulations. Specifically the person can lift, carry, push, pull 20 pounds occasionally and 10 pounds frequently, sit for six out of eight. Would need a sit/stand option during the day. Person is limited to occasional climb, stoop, crouch, kneel or crawl with no exposure to ladders, ropes, scaffolds, moving machinery or unprotected heights. With regard to that hypothetical would there be transferable work skills?
>
> A    I do need to ask a question for clarification. For the sit/stand option would they be able to sit primarily and just stand periodically –
>
> Q    Yes.

A    – for stretching?

Q    Yes.

A    With that option then, yes, the past clerical work would be appropriate and the dispatcher work would be appropriate as well. The DOT lists the clerical work at the light work category but most of those jobs are performed at the sedentary category.

Supp. R. 464-65. Young also testified that the person described in the hypothetical question could perform the jobs of telemarketer and customer service representative. Young testified that there were 8,500 telemarketer jobs in Missouri and 4,400 customer service representative jobs in Missouri. Supp. R. 466.

On cross examination, Young testified that the person in the hypothetical question could not perform any sedentary work if she could only sit for thirty minutes at a time. Supp. R. 467. The hearing concluded after Young's testimony.

Braungardt underwent a functional capacity evaluation on April 7, 2009. R. 439-52. The evaluation was performed by physical and occupational therapists at Midwest Rehabilitation, Inc., in Springfield, Illinois. The report stated that Braungardt was five feet tall, weighed 188 pounds, and had a body mass index (BMI) of 36.7. The report

noted that she was obese.  R. 444. The report stated that Braungardt demonstrated subjective tolerances at a light physical demand level.  R. 439.  The report, however, also stated that, "Given the degree of pain complaints as well as demonstration of pain behaviors, staff does not foresee  the  client being able to progress her activity levels to those required for performance of job duties in the foreseeable future." R. 439. The report recommended that Braungardt work in a job that allowed periodic alternating between sitting, standing, and walking as needed.  R. 439.  The report stated that Braungardt would have difficulty completing a full eight-hour work shift at a time.  R. 439.

Dr. Vest reviewed the report and opined that Braungardt was able  to  return to light-duty work with the following permanent restrictions: allow periodic alternating between sitting, standing and walking as needed, no bending or squatting, no lifting more than fifteen to twenty pounds, and no working more than eight hours per day.  R. 438.

The ALJ conducted the last hearing on June 1, 2009.  The ALJ held the third hearing to  give Braungardt the opportunity to present additional arguments and evidence.  R. 18.  Braungardt was the

only witness.  Her attorney asked her about the October 2008 surgery.

Braungardt testified that her leg pain was better after the surgery, but she still had back pain and pain in the front of her body from a pinched nerve.  R. 20.  She said the back pain and thoracic pain in her chest was still severe and was not affected by the surgery.  R. 20.  She said she could lie down for two hours before having to change positions.  She said that she could sit for thirty to forty-five minutes before she must get up and move around.  She said she could walk for fifteen to twenty minutes at a time.  After that, she must sit for five minutes to rest before resuming.  R. 21-22.  Braungardt stated that she could occasionally lift a gallon of milk.  R. 23.  She could ride in a car for about an hour, at which point, she must stop and get out and stretch before resuming the ride.  R. 25.  After Braungardt finished her testimony, the ALJ concluded the hearing.

## THE ALJ'S DECISION

The ALJ issued his decision on August 18, 2009.  The ALJ followed the five-step analysis set forth in the Social Security Administration regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful

activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Such severe impairments are set forth in the Listings. 20 C.F.R. Part 404 Subpart P, Appendix 1. The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to his prior work considering his residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the

claimant can perform some type of gainful employment that exists in the national economy.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The  ALJ found that Braungardt met her burden at Steps 1 and 2. She was not engaged in substantial gainful activity and she suffered from severe impairments that the ALJ described as discogenic and degenerative disorders of the back.  R. 12.  At Step 3, the ALJ found that the impairments were not severe enough to equal a Listing.

The ALJ then found that Braungardt had the RFC to perform light work except that: she must alternate between sitting and standing;  she can only occasionally climb, stoop, crouch, or kneel; and she cannot climb ladders, ropes, or scaffolds and cannot work around machinery or at heights. R. 12.  The ALJ found that Braungardt's testimony about the severity of her symptoms was not credible.  The ALJ also relied on Dr. Vest's April 2009 opinion that Braungardt could perform light work.  The ALJ noted that Braungardt's pain level was reduced to a 3 or 4 on a scale of 1 to 10 even though she was only on  Naproxen and Tylenol rather than a more potent  pain  reliever.    The ALJ also  relied on Braungardt's daily activities as evidence that supported the RFC determination.  The ALJ

noted that Braungardt did housework, moved the lawn, and engaged in hobbies.  R. 14.

The ALJ then determined at Step 4 that Braungardt could return to her prior work as a clerical assistant or dispatcher.  The ALJ relied on Young's testimony on this point. R. 15.  The ALJ did not formally reach Step 5 of the Analysis, but noted that Young opined that Braungardt could perform a significant number of jobs in the national economy, such as telemarketer and customer service representative. R. 15.  Based on the foregoing, the ALJ concluded that Braungardt was not disabled.  R. 15.

Braungardt appealed to the Social Security Administration Appeals Council.  The Appeals Council denied her request for review on December 11, 2009.  R. 2.  Braungardt then brought this action for judicial review.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence.  Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).

This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. <u>Delgado v. Bowen</u>, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all relevant evidence. <u>Herron v. Shalala</u>, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. <u>Diaz v. Chater</u>, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's decision is supported by substantial evidence. The ALJ's determination that Braungardt retained the RFC to do light work, with the noted limitations, is supported by the April 2009 opinion of her treating physician Dr. Vest. Dr. Vest opined that Braungardt could return to light duty work with limitations similar those in ALJ's RFC determination. The RFC determination is also supported by the opinions of agency physicians Drs. Norbury and Jiminez who opined that Braungardt had a greater exertional capacity.

The ALJ found that Braungardt's testimony regarding the severity of her condition was not credible. The Court will not review the credibility determinations of the ALJ unless the determinations lack

any explanation or support in the record. <u>Elder v. Astrue</u>, 529 F.3d 408, 413-14 (7th Cir. 2008). Some evidence in the record supports the credibility finding. Dr. Vest's opinion that she could return to light duty work, with limitations, is inconsistent with Braungardt's claims of debilitating pain. Braungardt's level of daily activity also could be viewed as inconsistent with her claims of debilitating pain. Given the evidence, the Court will not review the ALJ's credibility finding.

Vocational expert Young's opinion supports the conclusion a person with Braungardt's RFC could perform her prior work as a dispatcher and clerical assistant. The ALJ's decision that Braungardt was not disabled at Step 4 of the Analysis, therefore, is supported by substantial evidence.

Braungardt argues that the ALJ erred in forming his hypothetical question to Young because he did not include in the question the limitation that the person could only sit for thirty minutes at a time. The ALJ must include all relevant limitations in the formulation of questions to vocational experts. <u>See</u> <u>Young v. Barnhart</u>, 362 F.3d 995, 1003 (7th Cir. 2004). Substantial evidence, however, supports ALJ's decision not to include the thirty minute limitation. Dr. Vest opined

that Braungardt could perform light duty work as long as she could alternately sit, stand, or walk. He did not place a specific time limit on Braungardt staying in a particular posture. Given this evidence, the ALJ did not err in omitting a thirty-minute time limit from the hypothetical question.

Braungardt argues that the ALJ erred by stating his RFC assessment in a conclusory manner. The ALJ must explain the basis of the RFC assessment adequately. Braungardt criticizes the ALJ for failing to report the opinions of the therapist staff who performed the April 2009 functional capacity assessment. The functional capacity report stated that "staff does not foresee [Braungardt] being able to progress her activity levels to those required for performance of job duties in the foreseeable future." R. 439. Opinions of therapists may be considered, but therapists are not acceptable medical sources. Rather, Dr. Vest is an acceptable medical source. 20 C.F.R. 404.1513(a) and (d). Dr. Vest opined that Braungardt could return to light duty work. Dr. Vest's opinion supports the ALJ's RFC assessment.

Braungardt also criticizes the ALJ for relying on Braungardt's

daily activities to support the RFC assessment. The ALJ, however, did not rely solely on Braungardt's daily activities. The ALJ relied on Braungardt's medical history, including the opinions of Dr. Vest. R. 14. The ALJ adequately explained the basis for the RFC finding. There was no reversible error.

Braungardt also attacks the ALJ's credibility findings. Again, the Court will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record. Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008). The opinions of Drs. Norbury, Jimenez and Vest support the ALJ's determination that Braungardt could engage in light work. This evidence contradicts Braungardt's testimony that she could not work because of her pain, and so, provides some support for the ALJ's credibility determination. The Court, therefore, will not review the credibility determination.

Last, Braungardt argues that the ALJ failed to consider the effect of Braungardt's obesity on her RFC. Braungardt did not claim her obesity as a severe impairment. The ALJ should consider the impact of obesity because Braungardt's medical record indicates that obesity was a problem. See Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir.

2000).    In this case, the ALJ relied on the opinion of Braungardt's treating physician Dr. Vest.    Dr. Vest treated Braungardt and so knew  of  her obese condition.   Dr Vest also reviewed the functional analysis performed by Midwest Rehabilitation.  The report noted that she was obese.  R. 444.    Dr. Vest, thus, considered the effect of obesity on Braungardt when he opined that Braungardt could return to light work.  The ALJ,  thus, considered the effects of Braungardt's obesity when he relied on Dr. Vest's opinion as one of Braungardt's  treating physicians.   See  Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). In  the  context  of  this  case,  the  Court  sees  no  reversible  error.

THEREFORE, Plaintiff's Brief in Support of Complaint (d/e 11),  which  the  Court   has   construed  as  a  motion  for  summary judgment, is DENIED.    The  Commissioner's  Motion for Summary Affirmance (d/e 13)  is   ALLOWED,   and   the decision of the Commissioner is AFFIRMED.   All pending motions are DENIED as MOOT.    This case is closed.

ENTER:  December 17, 2010.

s/Charles H. Evans

CHARLES  H.  EVANS
United States Magistrate Judge
